(No. 21884.—)
THE PEOPLE *ex rel.* Roy Hess, County Collector, Appellant, *vs.* G. D. WHEELER *et al.* Appellees.

*Opinion filed June 22, 1933—Rehearing denied October 4, 1933.*

WALTER S. LAMON, State's Attorney, and CRAIG & CRAIG, for appellant.

VANSELLAR, VANSELLAR & McCLAIN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from an order of the county court of Edgar county sustaining objections filed to judgment and sale of certain lands of the appellees for a delinquent special assessment in a drainage district known as Drainage District No. 7 of the town of Buck, in the county of Edgar. Appellees objected to judgment on the ground that one Harry B. Adams, who, acting as treasurer for the drainage district, signed the delinquent list and filed the same in the office of the county treasurer, was not qualified to so act, had not been legally appointed and had not qualified as treasurer of the district.

Drainage District No. 7 was organized under the Farm Drainage act of 1885. (Cahill's Stat. 1931, chap. 42, secs. 120-204.) The record shows that a delinquent tax list including appellees' property was filed with the county collector of Edgar county in the manner, at the time and in the form required by the statute and that the assessment was properly levied, and no objection to the legality of the tax is interposed. This delinquent list was signed by Harry B. Adams, one of the commissioners, acting as treasurer of the district. The record of the drainage commissioners shows that at a meeting thereof on March 31, 1930, the commissioners found that the supervisor of the town of Buck did not desire to act as treasurer of the drainage district, and that the commissioners therefore appointed Harry B. Adams to act in that capacity and fixed his bond in the sum of $10,000. The evidence also is that one of the commissioners was told by the township supervisor of that township that the latter did not want to act as treasurer. No bond was filed by the supervisor as treasurer.

Adams continued to act as treasurer of the drainage district from the 31st of March, 1930, to the time of the hearing of this cause and had performed all duties of such official, including the filing of the delinquent list for the years 1930 and 1931. He prepared and executed a bond, with sureties, but the same had not been, at the time of the hearing herein, delivered to the town clerk. No question is raised as to the sufficiency of the bond or adequacy of the surety. No complaint is made of the manner in which the duties of treasurer have been discharged by Adams or of any insufficiency in the making up or filing of the delinquent list. It was stipulated on the hearing that a *prima facie* case was made by the People. The sole question is whether the fact that Harry B. Adams, one of the commissioners, acted as treasurer under appointment by the commissioners is sufficient to prevent judgment for the taxes and order for sale on the application of the county collector. The county court held that it is.

Section 3 of the Farm Drainage act provides that in counties under township organization the treasurer of the district shall be the supervisor of the town in which the district is situated. By section 30 of that act it is provided that when the commissioners shall have filed their tax list the clerk shall make out and certify to the treasurer of the district, copy of the tax list, and the treasurer shall execute a bond to the people of the State, in a sum not less than twice the amount of the tax levied, for the faithful performance of his duties as treasurer. In case the supervisor shall fail to give such bond as treasurer the commissioners may appoint a treasurer until the supervisor or his successor shall give such bond. Section 32 of that act makes it the duty of the treasurer of such drainage district to make out and certify a list of delinquent lands upon which any installment of assessments is due and unpaid and to file the same on March 10 with the county collector of the county, whose duty it is to transfer the amounts from

such return to the tax books, to be collected as other taxes are collected. It is not contended that the supervisor of the town in this case gave a bond, but the evidence is that he did not do so and stated that he did not wish to act as treasurer.

Appellees contend that the treasurer of a drainage district is an executive officer while the commissioners of the district are legislative officers, and that under article 3 of the State constitution, separating the powers of government, the commissioners had no power to appoint Adams, also a commissioner, and Adams had no power to act as treasurer or to file this delinquent list, and it was therefore void, and the proceedings brought by the county collector on such list were likewise void. The commissioners, after finding that the supervisor refused to act as treasurer, did appoint one of the commissioners to so act. He did act in that capacity and did discharge the duties devolving upon such treasurer in the manner required by the law. Other drainage acts prohibit a commissioner acting as such treasurer, but the Farm Drainage act contains no provision concerning the matter. While it may be doubted that a commissioner may be legally appointed treasurer of the district, his power to so act is attacked, not directly but collaterally, in this proceeding to collect the assessment. The commissioners had power to make a temporary appointment of a treasurer and thus create a *de jure* officer. Though their appointment was of one who was not entitled or qualified to serve, yet it has many times in this State been held that the acts of one acting as a *de facto* officer are valid when they concern the public or the rights of third persons who have an interest in the act done. An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the duties of the officer are exercised under such circumstances of reputation or acquiescence as are calcu-

lated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer which he assumes to be, or where he acts under the color of an appointment which is void because he was not eligible to act as such officer, or because of want of power in the appointing body, or by reason of some defect unknown to the public. Such a person will be considered a *de facto* officer though there may be irregularities in his appointment or lack of qualification on his part which would be fatal to his title in a direct proceeding. *City of Macomb* v. *Industrial Com.* 348 Ill. 611; *People* v. *Schmidt*, 281 id. 211; *Lavin* v. *Cook County Comrs.* 245 id. 496; *Leach* v. *People*, 122 id. 420; *State* v. *Carroll*, 38 Conn. 449.

*Trumbo* v. *People*, 75 Ill. 561, was a proceeding to collect a tax levied by persons assuming to act as directors of an illegal, and therefore non-existent, school district. The tax was sustained on the ground that the school directors were officers *de facto*, and that their acts, since they concerned the public and third persons, were as valid as though they were officers *de jure*. It was also there held that the proceedings to collect the tax were collateral to the right of the school directors to hold the office and the legality of their election could not be inquired into in that proceeding. Such is the case here. The objection is hypercritical and does not in any way involve or affect the substantial justice of the tax. The objection was not valid and the county court should have overruled it.

The judgment of the county court is reversed and the cause remanded to that court, with directions to enter judgment and order sale of the premises.

*Reversed and remanded, with directions.*